# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DELBERT PHILBIN,                     )
                                     )
                    Plaintiff,       )
                                     )        CIVIL ACTION
v.                                   )
                                     )        No. 11-4077-JWL
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
                    Defendant.       )
_____    )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.       Background

Plaintiff applied for DIB on March 12, 2007, alleging disability beginning June 1, 2006.  (R. 11, 109-16).  The application was denied, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 11, 61-62, 77-77).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Jack D.

McCarthy on August 11, 2009.  (R. 11, 27, 29)  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 11, 27-60).

In a decision issued January 27, 2010, ALJ McCarthy determined Plaintiff is not disabled within the meaning of the Act, and denied his application.  (R. 11-21).  He determined that Plaintiff has severe impairments of degenerative disc disease and status post spinal decompression and fusion surgery, but that his depression is not a severe impairment within the meaning of the Act.  (R. 13-16).  He determined that Plaintiff's impairments, even in combination, do not meet or medically equal the severity of a listed impairment and that Plaintiff has the residual functional capacity (RFC) for a range of light work limited by the inability to climb ladders, ropes, or scaffolds; the ability to stoop, crouch, kneel, crawl, balance, and climb ramps and stairs only occasionally; and the need to avoid concentrated exposure to cold and vibration.  (R. 16-20).  In assessing Plaintiff's RFC, the ALJ found that Plaintiff's allegations of symptoms resulting from his impairments are not credible (R. 17), noted that "[n]one of the physicians or psychiatrists involved in the claimant's treatment provided objective findings which would indicate the claimant was disabled," and accorded "some weight" to the treating source opinion of Dr. Smith.  (R. 18).  In explaining his RFC assessment, the ALJ stated that he "agree[d] with the treating physician and each of the State agency physicians who found the claimant is able to work, especially in view of his continuing part-time work, the findings of his work assessment, the number of normal findings on examination, and the absence of neural encroachment on X-ray and MRI."  (R. 19-20).  The ALJ determined that Plaintiff is

2

unable to perform his past relevant work as a carpenter and material handler, but that when considering Plaintiff's age, education, and work experience in addition to his RFC there are jobs in the economy in significant numbers that Plaintiff can perform, represented by jobs such as a folding machine operator, a small parts assembler, a bench assembler, a lens inserter, a production checker, or a semi-conductor assembler.  (R. 20-21).  Consequently, the ALJ determined plaintiff is not disabled within the meaning of the Act, and denied his application for benefits.  (R. 21).

Plaintiff sought Appeals Council review of the ALJ's decision, and submitted additional evidence to the Appeals Council.  The Appeals Council accepted the additional evidence and made it a part of the administrative record in the case.[1]  (R. 5).  The Council considered the new evidence and found that it does not provide a basis for changing the ALJ's decision.  (R. 1-2).  It found no reason under the Social Security Administration

---

[1]The evidence made a part of the administrative record by order of the Appeals Council consists of exhibits 30F through 33F.  (R. 455-98).  However, the administrative record filed with the court also includes exhibits 34F through 38F with facsimile headers dated after the date of the ALJ's decision, and apparently submitted to the agency after the ALJ's decision was issued.  (R. 499-542).  Plaintiff's brief has an argument based upon "new evidence" contained in exhibit 38F.  (Pl. Br. 12) (citing (R. 539-40)).  The evidence to which Plaintiff cites, however, is also contained in exhibit 32F which was made a part of the administrative record by order of the Appeals Council.  (R. 473-74).

Neither party objected to the administrative record as filed with the court, and that record includes a "Certification" by Mr. James Jones, the Chief, Court Case Preparation and Review Branch 2, Office of Appellate Operations, Office of Disability Adjudication and Review, of the Social Security Administration.  (Doc. 9, Answer, Attach. 1).  Mr Jones certified that the record filed with the court is "a full and accurate transcript of the entire record of proceedings relating to this case."  Id.  Therefore, the court has considered the entire administrative record filed with the court in reaching its decision.

(SSA) rules to review the ALJ's decision, and denied Plaintiff's request.  Therefore, the

ALJ's decision became the final decision of the Commissioner.  (R. 1); <u>Blea v. Barnhart</u>,

466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision.

(Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  <u>Weinberger v. Salfi</u>,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); <u>Wall v. Astrue</u>, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); <u>Brandtner v. Dep't of Health and Human Servs.</u>, 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084

(10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  <u>Wall</u>, 561 F.3d at

1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency."  <u>Bowman v.</u>

<u>Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health &</u>

4

Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

       An individual is under a disability only if that individual can establish that he has a

physical or mental impairment which prevents him from engaging in any substantial

gainful activity, and which is expected to result in death or to last for a continuous period

of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)

(citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity

that he is not only unable to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work

existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

       The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. § 404.1520 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing

Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be

made at any of the steps that a claimant is or is not disabled, evaluation under a

subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at

5

1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims that the ALJ erred in his credibility determination by failing to properly account for the side effects of medication and by relying too heavily on Plaintiff's ability to work part-time.  He claims that the ALJ erred in his RFC assessment by failing to include restrictions in Plaintiff's mental abilities resulting from depression,

6

as is particularly demonstrated by the Global Assessment of Functioning (GAF) scores[2] in the record and by the new evidence provided to the Appeals Council.  Finally, Plaintiff claims that public policy weighs against relying on a claimant's performance of part-time work when denying disability benefits.[3]

The Commissioner argues that the ALJ properly considered the factors relevant to credibility, including Plaintiff's part-time work and the side effects from medication, and that substantial evidence supports the ALJ's credibility finding.  He argues that Plaintiff's policy argument regarding part-time work is baseless.  Finally, he argues that the ALJ

_____

[2]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  Id. at 34.  GAF is a classification system providing objective evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

[3]Plaintiff's brief is organized differently than presented here.  Plaintiff's first argument is that the ALJ erred in considering side effects from medicine in his credibility determination.  He then argues that the ALJ erred in his RFC assessment by failing to include restrictions in Plaintiff's mental abilities resulting from depression, as suggested by the GAF scores and by the new evidence presented to the Appeals Council.  Finally, he argues that the ALJ erroneously considered part-time work because in his credibility determination he relied too heavily on that factor, and because public policy weighs against relying on a claimant's performance of part-time work to deny disability benefits.
Because the credibility determination requires weighing all of the relevant factors "in combination," Huston v. Bowen, 838 F.2d 1125, 1132 & n.7 (10th Cir. 1988), the court considered all of Plaintiff's arguments regarding credibility together.  When considering Plaintiff's credibility argument regarding part-time work, the court also considered Plaintiff's public policy argument in that regard.

properly found Plaintiff's mental impairments are not severe, that the ALJ properly applied the psychiatric review technique for evaluating mental impairments, and that substantial record evidence including the new evidence provided to the Appeals Council supports the ALJ's decision.

The court has reviewed the evidence and the parties' arguments, and finds that the ALJ applied the correct legal standard, and that substantial record evidence supports the decision.  The court begins its discussion with consideration of the ALJ's credibility determination.

## III.   The Credibility Determination

Plaintiff claims the ALJ erred in his credibility determination because he "did not properly assess Philbin's credibility regarding side effects from his medications" (Pl. Br. 8), and his "credibility finding is not supported by substantial evidence because he relied heavily on Philbin's ability to work part-time."  Id. at 14.  Plaintiff points to known potential side effects from medications he takes, and to his testimony that his medications caused him to be "scatterbrained" and caused drowsiness.  Id. at 8-9 (citing Physician's Desk Reference).  He argues that the ALJ did not adequately address his testimony regarding limitations from side effects, did not discuss or develop the record regarding Plaintiff's allegations of side effects, and "did not account for any side effects of medication in his residual functional capacity findings."  (Pl. Br. 9-10).

With regard to his allegation of improper reliance on part-time work, Plaintiff points to his testimony that his employer made accommodations for his impairments and

8

eventually took "away all my duties and put[] me on salary so that I get a check every two weeks whether I'm working or not." Id. at 13-14.  He argues that the mere fact of employment is not "proof positive" of non-disability, and that the ALJ took Plaintiff's part-time work out of context and unfairly applied it to discount his credibility.  He then argues that three features of the Social Security disability determination process encourage part-time work and justify a public policy reason not to use part-time work to discount the credibility of a claimant's allegations of disabling symptoms.  He argues that these features are:  (1) the lengthy processing time for disability applications, which forces claimants to seek work in order to live; (2) the Social Security regulations and rulings which recognize that work may be "subsidized," and require that such work may not be considered "substantial gainful activity;" and (3) the regulations which encourage claimants to work if they are able, and provide that in certain situations where wages fall below the level of "significant gainful activity" because of the claimant's impairments or because of the removal of special conditions, the work is considered an unsuccessful work attempt, and will not be used to deny disability benefits.  Id. at 16.

The Commissioner argues that the ALJ properly considered all of the record evidence in making his credibility determination, including the medical evidence, the opinion evidence, medical treatment records, a rehabilitation work assessment, Plaintiff's part-time work, and Plaintiff's daily activities.  (Comm'r Br. 5).  He specifically noted treatment records showing normal or mild clinical findings and Plaintiff's reports to health care providers that he was "a little tired," his pain was controlled with medication,

and his symptoms were further decreased when he began using a spinal cord stimulator. Id.  The Commissioner points to the ALJ's consideration of medical source opinion evidence that Plaintiff could return to work, of the fact that no physician stated Plaintiff was disabled, and of a functional capacity evaluation performed for Dr. Smith which concluded Plaintiff could perform work.  Id. at 6.  He points to the ALJ's consideration of Plaintiff's daily activities and of Dr. McKenna's psychological examination report.  Id.

Then, the Commissioner argues that the ALJ appropriately considered Plaintiff's allegations of side effects from medication and found that Plaintiff had some such side effects but that they were not so severe as to interfere with his ability to work, and he argues that the finding is supported by substantial record evidence.  (Comm'r Br. 7).  He argues that the record shows a relatively few reports to medical sources which show minimal side effects and that no physician suggested significant work-related limitations from side effects.  He points out that the ALJ must consider the side effects actually experienced and reported by Plaintiff, not all of the possible side effects mentioned by the health care providers or by other medical sources.  Id.

Finally, the Commissioner argues that the ALJ properly evaluated Plaintiff's part-time work, and noted that employment, even part-time employment, during a period of alleged disability is probative of the ability to work.  Id. at 8.  The Commissioner notes that the cases cited by Plaintiff in support of his argument are not controlling in this Circuit, and distinguishes the cases cited from the facts of this case.  Id. at 8-9.  He points out that the ALJ considered Plaintiff's allegation that his work provided accommodations.

10

The Commissioner also argues that Plaintiff's policy argument is baseless, and that the ALJ specifically considered the regulations and rulings upon which Plaintiff relies for his arguments regarding accommodations and unsuccessful work attempts.  Id. at 9.

##### A.    Standard for Evaluating Credibility

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule").

However, the Tenth Circuit has condemned the practice of dismissing a claimant's allegations of symptoms on the strength of a boilerplate recitation of the law.  White, 287 F.3d at 909 (citing Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995) (where the ALJ merely notes the law governing assessment of credibility, discusses the evidence in general terms, and finds in a conclusory fashion that the evidence does not support plaintiff's allegations of disabling severity, remand is necessary to allow the ALJ to make specific findings linking his credibility findings to the evidence)).

Nonetheless, Plaintiff must demonstrate error in the ALJ's credibility rationale or finding, the mere fact that there is evidence which might support a contrary finding will

not establish error in the ALJ's determination.  "The possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's

findings from being supported by substantial evidence.  We may not displace the

agency's choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo."  Lax, 489

F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed.

Maritime Comm'n, 383 U.S. 607, 620 (1966).  But, "[f]indings as to credibility should be

closely and affirmatively linked to substantial evidence and not just a conclusion in the

guise of findings."  Huston, 838 F.2d at 1133.  Therefore, where the ALJ has reached a

reasonable conclusion that is supported by substantial evidence, the court will not

reweigh and reject it even if the court might have reached a contrary conclusion in the

first instance.

### B.      The ALJ's Credibility Determination

The ALJ's credibility analysis is a thread which runs throughout the decision at

issue.  In his step one analysis, the ALJ noted Plaintiff's testimony regarding his part-time

work.  (R. 13).  He recognized Plaintiff's testimony that he was given accommodations

and was allowed to go home and rest for a couple of hours if he was in pain, and he noted

Plaintiff's activity was close to, but did not rise to, the level of substantial gainful activity.

Id.  In his step two analysis regarding severe impairments, the ALJ summarized Plaintiff's

testimony regarding the physical and mental limitations resulting from his symptoms, the

record evidence regarding the course of Plaintiff's treatment, and the opinions of the

12

medical sources regarding the nature and severity of Plaintiff's impairment(s), regarding

his symptoms, and regarding his physical or mental restrictions.  (R. 13-16).  Finally, in

his RFC assessment, the ALJ summarized the standard for evaluating the credibility of a

claimant's allegations of symptoms resulting from his impairments, and found that

Plaintiff's allegations are not credible.  Id. at 17-18.  The ALJ then stated his RFC

analysis which the court quotes in part here, as it relates to the credibility determination:

> While the claimant alleges totally disabling mental and physical conditions,
> he has an ongoing work history after the claimant's alleged onset of
> disability and following his surgery in 2004.  The claimant has been
> working on a part-time basis for Heart of America Food Services LLC since
> 2005 as a floater from 8:30 a.m. to 2:30 p.m., cooking, training people, and
> receiving material for convention stands.  While the claimant testified he is
> given accommodations allowing him to go home and rest a couple of hours
> if he is hurting, his earnings are close to substantial gainful activity.  He
> made $9,575 in 2007 and $10,400 in 2008 from a part-time job.  The
> evidence of the claimant's work record after his alleged disability onset date
> indicates the work involved significant mental and physical activities which
> have been performed for pay.  Although the time spent at a job or the
> average earned for a month or more may not always indicate substantial
> gainful activity, a claimant may still be determined to have the ability to
> engage in substantial gainful activity, if the medical and vocational factors
> of the case support such a conclusion.  (SSR [(Soc. Sec. Ruling)] Nos. 83-
> 33, 83-35)  The ability to do substantial work activity is defined by the
> Social Security act as work activity involving significant physical or mental
> activities, even if performed on a part-time basis and the individual has little
> responsibility.  Gainful work activity includes work activity usually done
> for pay or profit, whether or not a profit is realized.  While the work
> performed may not constitute substantial gainful activity, as that term is
> defined in the regulations; nonetheless, it can be considered as a factor in
> determining the claimant's ability to engage in work-related activities.
>
> The medical opinions and notes throughout the record weigh against the
> claimant's allegations of a disability.  The claimant's allegations of
> symptom levels that preclude all types of work are not consistent with the
> evidence as a whole.  None of the physicians or psychologists involved in

the claimant's treatment provided objective findings which would indicate the claimant was disabled. The claimant's treating physician and each of the State agency physicians found the claimant to be able to work. (Exhibit 3F, pp. 3, 4 [(R. 325, 326)]). Dr. Smith opined based upon a FCE [(functional capacity evaluation)] the claimant could lift 30 pounds occasionally, 20 pounds frequently, and 10 pounds constantly with no bending, twisting, climbing, or driving while on medication. Dr. Smith's opinion is given weight to the extent it is consistent with the opinions of the State agency medical consultants. (Exhibits 7E, 7F, 13F, 14F, 15F, 26F and 27F [(R. 196-203, 357-70, 392-94, 444-45)]).

(R. 18).

Specifically, medical treatment of the claimant appears to control symptoms when he is compliant with his medications and treatment for relief of pain and other symptoms. Objective findings on exam are mostly normal, with some reduced range of motion. Follow-up visits to Dr. DeSilva indicated progress. A visit dated August 13, 2008 noted the claimant's back pain level was 5 out of 10 and his leg pain was 2-3 out of 10. The claimant related his pain was well controlled. Upon examination he had a limited lumbar spine range of motion. Straight leg raising was negative. His gait pattern was normal and strength in both legs was 5/5. While there was some medication produced side effects, they did not seem to prevent the claimant from working his part-time job. (Exhibit 22F, p.2 [(R. 421)]) An outpatient rehabilitation work assessment, dated October 5, 2006, indicated low back pain with numbness and tingling down the left leg. It was noted the claimant had no overt pain behaviors and symptoms were "well in control." He was found capable of medium work. (Exhibit 2F, pp. 12, 13 [(R. 300, 301)]) Conditions that can be reasonably regulated by treatment cannot constitute a basis of disability. If an impairment can be controlled by treatment or medication, it cannot be considered disabling. When an individual's impairment is improved by treatment or medication and that treatment or medication is prescribed and available, then only the limitations remaining after treatment are considered for disability purposes.

While the claimant alleges totally disabling physical and mental conditions, a State agency consultative examination on May 24, 2007, by Arthur D. McKenna, Ph.D., (Exhibit 5F, p.2 [(R. 352)]) observed the claimant reported no problems with his Activities of Daily Living. He was able to prepare meals, shop, drive, and do laundry, and he enjoyed going fishing. The evidence of the claimant's daily activities after his alleged disability

14

onset date indicates involvement of significant mental and physical activities.  The evidence shows the claimant's daily activities demonstrate successful independent living which is inconsistent with the claims of disabling impairments.  This level of activity demonstrates a level of vigor and an ability to concentrate and interact with others which is inconsistent with the claimant's claim that he is unable to perform any work activity.

The undersigned agrees with the treating physician and each of the State agency physicians who found the claimant is able to work, especially in view of his continuing part-time work, the findings on his work assessment, the number of normal findings on examination, and the absence of neural encroachment on X-ray and MRI.

(R. 19-20).

## C.    Analysis

As the rationale quoted above demonstrates, the ALJ's credibility determination was not merely a boilerplate recitation of the law.  Rather, he closely and affirmatively linked his findings to substantial record evidence (much of which was previously summarized by the ALJ in his step two discussion), and reached a reasonable conclusion that is supported by substantial record evidence.  Much of Plaintiff's credibility argument merely asserts that the ALJ's analysis was not "proper" and did not accord sufficient weight to Plaintiff's testimony.  To be sure, there is evidence from which the ALJ might properly have found that side effects from medication were more limiting and that Plaintiff's part-time work would not support an ability to perform work activity.  However, that is not the only reasonable view of those two factors suggested by the record.  Plaintiff does not point to evidence which precludes the ALJ's findings.  The ALJ explained his rationale, and substantial record evidence supports that rationale.

15

Moreover, as the Commissioner argues, and as the ALJ's analysis reveals, the credibility determination rests on more credibility factors than just side effects of medication or performance of part-time work.  As he is required to do, the ALJ considered all of the factors in combination, and the court cannot conclude that this was error.  Plaintiff's arguments that the ALJ did not <u>adequately address</u> Plaintiff's testimony of side effects, and relied <u>too heavily</u> on his part-time work asks the court to reweigh the credibility factors and substitute its determination for that of the Commissioner.  Even if the court would have decided in the first instance that Plaintiff's allegations were credible, it is without authority to substitute its judgment for that of the Commissioner in these circumstances.

Finally, the court rejects Plaintiff's public policy argument that part-time work should not be used to discount the credibility of a claimant's allegations of disabling symptoms.  As the Commissioner pointed out, the ALJ specifically noted that he had considered the ruling and the regulations to which Plaintiff appeals.  (R. 12, 18) (citing 20 C.F.R. §§ 404.1572, 404.1574, 404.1575; SSR 83-33).  The ALJ considered whether Plaintiff's part-time work was "subsidized" work or an "unsuccessful work attempt."  Moreover, Plaintiff acknowledges that the ALJ recognized that his part-time work was not "substantial gainful activity" and that the ALJ did not deny benefits at step one of the sequential evaluation process.  (Pl. Br. 16).  Moreover, he acknowledges that the case to which he cites involved a step one denial, but argues that the "true value" of his part-time work should preclude consideration of that work when evaluating credibility.  <u>Id.</u>  But, as

16

the Commissioner argues, the fact that Plaintiff is working part-time is some evidence that his symptoms are not as severe and disabling as he alleges.  The ALJ is required to evaluate the credibility of Plaintiff's allegations.  The work at issue here is relevant to that evaluation.  And, Plaintiff points to no regulation, ruling, or case law which precludes consideration of that work.

Moreover, Plaintiff makes his appeal to public policy in the wrong forum.  Policy decisions are properly left to Congress, not the courts.  The Supreme Court has advised that "[w]hatever merits ... policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them." Artuz v. Bennett, 531 U.S. 4, 10 (2000).  In the Social Security Act, Congress expressly delegated substantive rulemaking authority to the Commissioner and thereby "has 'conferred on the [Commissioner] exceptionally broad authority to prescribe standards for applying certain sections of the Act.' " Heckler v. Campbell, 461 U.S. 458, 466 (1983) (quoting Schweiker v. Gray Panthers, 453 U.S. 34, 43 (1981)).  In light of this rather extensive legislative grant of authority, the court must give the Commissioner's regulations "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984).  It is not the role of courts to substitute what they perceive as sound public policy for the Commissioner's judgment.  New York v. Sullivan, 906 F.2d 910, 916 (2d Cir. 1990).  Plaintiff's argument that part-time work should not be used to discount the credibility of a claimant's allegations of disabling symptoms must be

addressed to Congress for legislative implementation, or to the Commissioner for the rulemaking process.

## IV.   RFC Assessment

Plaintiff claims the ALJ erred in failing to include RFC limitations which were attributable to Plaintiff's mental impairments.  First, Plaintiff points to GAF scores of 48, 50, and 55 which were assigned, respectively, by his therapist, Mr. Perry; by his treating psychiatrist, Dr. DeSilva; and by a psychologist who performed a psychological examination for a workers' compensation hearing, Dr. Eyman.  (Pl. Br. 12).  He notes that GAF scores of 41 to 50 indicate "serious symptoms" or "any serious impairments in social, occupational, or school functioning," and he argues that the ALJ ignored this "significant evidence that Philbin's depression affected his ability to work, and thus failed to include any mental limitations in his RFC findings."  (Pl. Br. 12) (citing DSM-IV-TR at 34).

Plaintiff's second point of attack on the ALJ's RFC assessment is that Plaintiff provided new evidence to the Appeals Council including a "Functional Capacities Evaluation" by Dr. DeSilva, which opined regarding numerous "moderate" and "moderately severe" limitations in Plaintiff's mental abilities.  Id. at 12-13 (citing R. 450).  He argues that this new evidence "upsets the ALJ's decision," "undercuts the ALJ's credibility analysis," and "shows that Philbin would experience work related limitations due to his mental impairments."  Id. at 13.  He concludes by arguing that the RFC

assessed by the ALJ is not supported by substantial evidence, and that this court should "remand for adequate evaluation of Philbin's mental limitations." Id.

The Commissioner argues that the ALJ properly found Plaintiff's mental impairments are not severe and do not significantly limit his ability to work. (Comm'r Br. 10-14). He argues that the ALJ adequately considered the evidence of Plaintiff's mental impairments, including the GAF scores, properly applied the psychiatric review technique, and did not ignore those scores. Id. 10-12. With regard to Dr. DeSilva's opinion presented to the Appeals Council, the Commissioner argues that the new evidence does not undercut the ALJ's decision or cast doubt on his findings. He argues that in light of the record evidence available to the ALJ, and including the treatment records dated after the ALJ's decision, the evidence as a whole "overwhelmingly continues to support only minimal or mild mental limitations." (Comm'r Br. 13-14).

The court finds no error in the decision. Plaintiff's argument that the ALJ ignored certain GAF scores is simply not supported by the evidence. Plaintiff asserts that Dr. DeSilva assessed a GAF score of 50 which the ALJ ignored. (Pl. Br. 12) (citing R. 411). However, the ALJ specifically discussed Dr. DeSilva's examination upon referral by Plaintiff's therapist, Mr. Perry. (R. 16) (citing Ex. 19F, pp.3,4 (R. 410, 411)). The ALJ noted that Plaintiff "was referred by his therapist to psychiatrist Mahasen T. DeSilva, M.D., . . . due to increasing anxiety and depression." Id. He stated, "upon examination the psychiatrist diagnosed moderate major depressive disorder with a GAF of 50

indicating serious problems." <u>Id.</u> (emphasis added).  The GAF score identified here by the ALJ is one of those which Plaintiff asserts the ALJ "ignored."

Plaintiff makes the same mistake with regard to Dr. Eyman's GAF score.  Plaintiff asserts that Dr. Eyman assessed a GAF score of 55, and argues that the ALJ ignored this score.  (Pl. Br. 12) (citing R. 433).  The ALJ, however, specifically considered Dr. Eyman's report, and noted that Dr. Eyman "diagnosed moderate major depression and dependent personality disorder with a GAF of 55, indicating moderate severity."  (R. 16) (citing Ex. 23F, pp.2-9 (R. 426-33)).  Again, the ALJ did not ignore Dr. Eyman's GAF score.

Plaintiff is correct in his assertion that the ALJ did not specifically mention the GAF score of 48 assigned by Plaintiff's therapist, Mr. Perry.  (Pl. Br. 12) (citing R. 244). However, the record reveals that Plaintiff was referred to Dr. DeSilva by Mr. Perry, and that Dr. DeSilva assigned a GAF score of 50.  (R. 244-45, 410-411).  Mr. Perry is not an acceptable medical source whereas Dr. DeSilva is an acceptable medical source.  And, the ALJ recognized that Plaintiff was referred to Dr. DeSilva by his therapist (Mr. Perry).  In these circumstances, Plaintiff can not show that it was error to rely on Dr. DeSilva's GAF score rather than Mr. Perry's.  Plaintiff has not shown error in the ALJ's consideration of the GAF scores.

With regard to the new evidence submitted to the Appeals Council, the court finds no error.  As Plaintiff argues, the Appeals Council stated it had considered the new evidence, but found that the evidence did not provide a basis for changing the ALJ's

decision.  (R. 1-2).  Moreover, as Plaintiff points out, and the Commissioner does not

contest, such new evidence becomes a part of the administrative record which the court

will review in deciding whether substantial evidence supports the Commissioner's final

decision.  O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994).  However, Plaintiff does

not show how the new evidence demonstrates error in the decision.

He asserts merely that the new evidence "upsets the ALJ's decision," "undercuts

the ALJ's credibility analysis," and "shows that Philbin would experience work related

limitations due to his mental impairments."  (Pl. Br. 13).  He does not even suggest what

specific mental limitations the ALJ missed in assessing Plaintiff's mental impairments.

As Plaintiff suggests, Dr. DeSilva's opinion indicates Plaintiff has "moderately severe"

limitations in eight mental abilities, and "moderate" limitations in an additional seven

mental abilities.  (R. 540).  However, Dr. DeSilva's opinion is merely a check-the-block

form which provides no rationale for the limitations suggested and does not cite to

treatment notes or to some other factual basis to support the limitations assessed.  If the

opinion is to be sufficiently weighty to overcome the rationale and findings of the RFC, it

must be on the basis of record evidence with supports the limitations therein and detracts

from the ALJ's determination that Plaintiff's mental impairments are not severe and do

not produce more than minimal work-related limitations.  Plaintiff makes no attempt to

point to such evidence.  Indeed, the Commissioner asserts that in light of the record

evidence as a whole, including the records provided after the ALJ's decision, Dr.

DeSilva's opinion does not justify changing the ALJ's decision.

21

The court finds no error in the Commissioner's decision as alleged by Plaintiff.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 5th day of July 2012, at Kansas City, Kansas.


s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**